(Nos. 39424, 40071, and 40688 cons.—
THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
DANIEL SLAUGHTER, Appellant.

*Opinion filed March 28, 1968.*

WARD, J., took no part.

CARL F. McGARRITY, of LaGrange, appointed by the court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED

G. Leach, Assistant Attorney General, and Elmer C. Kissane, Assistant State's Attorney, of counsel,) for the People.

Mr. Justice Schaefer delivered the opinion of the court:

The basic issue that permeates these consolidated cases concerns the quality of representation required of counsel appointed to represent an indigent prisoner in proceedings under the Post-Conviction Hearing Act. Ill. Rev. Stat. 1965, chap. 38, pars. 122—1 through 122—7.

After a trial before a judge of the circuit court of Cook County, the defendant, Daniel Slaughter, was found guilty of the murder of his wife, and on November 24, 1961, he was sentenced to imprisonment for a term of fourteen years. On writ of error the judgment of conviction was affirmed. (*People* v. *Slaughter*, 29 Ill.2d 384.) In that case the court held that by introducing evidence on his own behalf the defendant had waived his contention that a verdict in his favor should have been directed at the close of the People's evidence. His other principal contention, that the element of malice aforethought was not established beyond a reasonable doubt, presented, in the opinion of the court, "a closer issue." (29 Ill.2d at 389.) In resolving that issue the court relied first upon testimony that on a previous occasion, during a quarrel with his wife, the defendant had threatened to "knock her brains out," and second, upon his conflicting versions of the "accident" and the conflict between his explanations and the physical facts. After discussing the evidence the court concluded: "Such vacillations are hardly consistent with an honest claim of accident and we believe that defendant, having undertaken to explain and justify the shooting to the authorities, may be judged by the conflicts and improbabilities in those explanations. Considered in conjunction with the evidence of malice implicit in defendant's prior threat to do violence to his wife, we

are satisfied that there was sufficient evidence to establish the element of malice beyond a reasonable doubt." 29 Ill.2d at 390-391.

On November 9, 1965, the defendant filed a *pro se* post-conviction petition in which he alleged his indigence and requested the appointment of counsel. While his petition used something akin to legal terminology, it was basically incoherent. The last two paragraphs are illustrative. "The entire proceedings upon which the conviction was had were grossly illegal, wanting in law, and contrary to the Constitution of the United States, and the State of Illinois, being contested in the following manner:

"Petitioner's allegations of the manner in which his Constitutional Rights were violated, on the allegations the petitioner bases his petition, and he verily believes that upon hearing of the cause under the Post-Conviction Hearing Act, Rule 27 it will be much more clearly shown that this petitioner was deprived of his liberty without due process of law, and reversal shall be entered by the Court of jurisdiction in accordance with the meaning of Article Two (2) Section Nineteen (19), of the Illinois State Constitution, and the (14th) Amendment of the Constitution of the United States. His lack of funds and his inability to the required date from his place of incarceration, upon hearing of the cause he be given the use of subpoena to obtain the truth to place before the Court."

On February 9, 1965, the State filed a motion to dismiss the post-conviction petition because it failed to satisfy the requirements of the statute. That motion came on for hearing on March 4, 1965, and the entire report of proceedings at the hearing on the motion to dismiss is as follows:

"THE CLERK: Daniel Slaughter.

"ASSISTANT STATE'S ATTORNEY: It's your case. We filed a written motion. In 61-1632, the crime was murder. On Nov. 24th, 1961, there was a sentence of 14 years to the Illinois State Penitentiary. There was a Writ of Error,

reported in 29-Illinois (2d) 384, which was affirmed, and the order was entered down here on December 23rd, 1963. All of his allegations are nothing more than mere conclusions, and we have filed a Motion to Dismiss. They are bare allegations and the allegations affirmed are res judicata to the petition.

"ASSISTANT PUBLIC DEFENDER: Just for the record, the petitioner alleges that the entire proceedings upon which the conviction was had were grossly illegal, wanting in law and contrary to the Constitution of the United States in that, generally, his rights were violated, his constitutional rights were violated.

"THE COURT: All right, motion of the respondent to dismiss is sustained."

On March 29, 1965, the defendant filed two *pro se* motions. One of these motions requested that the judgment dismissing the defendant's post-conviction petition be vacated because the defendant had not been present at the hearing and had not been adequately represented by the Public Defender. The motion was illiterate and repetitive, but the message it sought to convey appears unmistakably from the following paragraph: "8. For subjecting the Petitioner to counsel incompetent of criminal laws, unacknowledged of his case, that said court appointed counsel wilfully disavowed Petitioner's repeated pleas for correspondence and consultation, which would inevitable abolish the said court appointed counsel's efficiency in this case, therefore, the Court must, acquiesce in the necessity which denounce the said court appointed counsel's representation, and hold it, as the Court hold other cases represented without counsel." The other motion filed by the defendant requested the appointment of counsel other than the Public Defender.

These motions came on for hearing on May 13, 1965. At that time the assistant State's Attorney urged the court to deny the defendant's motion to vacate the order dismissing the post-conviction petition. The assistant public

defender then stated: "We represented Daniel Slaughter in the post conviction; and, as counsel pointed out, it was dismissed on March 4th, 1965. We advised Mr. Slaughter that it was dismissed. Now, we've gone as far as our appointment is concerned. * * * There's no problem here." And after the court had ruled that the "petition" to vacate the judgment would be denied, the assistant public defender stated: "We're not involved in this petition." No action was taken on the defendant's motion for the appointment of other counsel. On February 3, 1966, the defendant filed a *pro se* motion for leave to amend his petition, which was summarily denied on that day.

We granted the defendant leave to appeal from the order dismissing his original post-conviction petition (No. 39424), and he has appealed from the orders that denied his motion to vacate the dismissal and his motion for leave to file an amended petition. (No. 40071.) The attorney who now represents the defendant was appointed by this court. He moved in this court to vacate the orders appealed from and to remand the cause to the circuit court. The motion was denied. He then moved for an extension of time within which to file his abstract and brief. That motion was allowed, and on March 1, 1967, he filed a new post-conviction petition in the circuit court in which he alleged that the constitutional rights of the defendant were violated because he was not mentally competent to stand trial, and because his testimony at a coroner's inquest had been received in evidence against him, although he was neither represented by counsel at the inquest nor advised of his right to be represented. The presiding judge dismissed this petition on the ground that under section 3 of the Post-Conviction Hearing Act (Ill. Rev. Stat. 1967, chap. 38, par. 122—3) no more than one petition could be filed. The defendant appealed from this order of dismissal (No. 40688), and the three appeals have been consolidated in this court.

What happened in the trial court in this case and what

has happened in other cases has demonstrated to us that it is important now to re-emphasize the purpose of the Post-Conviction Hearing Act and to describe again the circumstances which prompted its enactment by the General Assembly in 1949. The story has been told before (Jenner, Th Illinois Post-Conviction Hearing Act, 9 F.R.D. 347), and it is not necessary to repeat it in full detail.

Beginning at least as early as 1932, in *Powell* v. *Alabama,* 287 U.S. 45, 77 L. Ed. 158, 53 S. Ct. 55, the Supreme Court of the United States, acting under the due-process clause of the fourteenth amendment, had indicated its concern with criminal procedures employed in the State courts throughout the country. As the years went by that concern increased under the pressure of numerous applications for *certiorari* in the Supreme Court and for *habeas corpus* in the Federal district courts, all seeking review of judgments of conviction entered in the State courts. In deference to the determinations of the State courts, the Supreme Court of the United States had limited its jurisdiction on *certiorari* and the jurisdiction of the district courts in *habeas corpus* to those cases in which State court remedies had been exhausted. The doctrine of exhaustion of State remedies inevitably focused attention upon the remedies available by way of collateral attack upon judgments of conviction in the State courts. In Illinois, as generally elsewhere, *habeas corpus* in criminal cases had been restricted to those cases in which the judgment under attack had been entered by a court that was without jurisdiction. *Coram nobis* was the other most familiar method by which a judgment might be attacked collaterally after the time for direct review by appeal or writ of error had expired. But *coram nobis* had developed to meet the needs of civil litigation and in the process had accumulated its own peculiar set of limitations which were unrelated to the problem of collateral attack upon judgments of conviction in criminal cases.

The situation became most acute with respect to criminal cases originating in Illinois because prisoners incarcerated in Illinois had free access to the courts by mail. See *United States ex rel. Bongiorno* v. *Ragen,* 54 F. Supp. 973 (D.C. N.D. Ill:), aff'd (7th cir. 1944) 146 F.2d 349.

The available methods by which a judgment of conviction could be attacked in Illinois were writ of error, *habeas corpus,* and *coram nobis.* The Supreme Court of the United States was troubled, because no matter which method a prisoner pursued, he appeared always to be met by a claim that he should have pursued a different remedy. This situation prompted the concurring opinion of Mr. Justice Rutledge in *Marino* v. *Ragen,* in which he referred to "the Illinois merry-go-round of writ of error, *habeas corpus,* and *coram nobis."* (1947) 332 U.S. 561, 570, 92 L. Ed. 170, 68 S. Ct. 240.

Shortly after this decision, a joint committee of the Illinois and Chicago Bar Associations was established to deal with the problem. That committee submitted two rules to the Supreme Court of Illinois for adoption. One of them required that the entire proceeding on arraignment in a criminal case involving a felony be transcribed and made a part of the common-law record. The other rule provided a post-conviction remedy. Its provisions were substantially those of the present Post-Conviction Hearing Act. The first of these rules was promptly adopted by this court, and was known for many years as Rule 27A. (Ill. Rev. Stat. 1949, chap. 110, par. 259.27A.) The rule which provided a post-conviction remedy was held under advisement by the court for many months. Shortly after the court announced that it would not adopt the rule, the proposed post-conviction rule was converted into statutory form and was enacted by the Illinois General Assembly. Ill. Rev. Stat. 1949, chap. 38, pars. 826-832.

The Post-Conviction Hearing Act provides that counsel shall be appointed to represent indigent prisoners who re-

quest counsel, and it also provides that a petition may be amended or withdrawn. (Ill. Rev. Stat. 1967, chap. 38, pars. 122—4, 122—5.) These provisions were included because it was anticipated that most of the petitions under the Act would be filed *pro se* by prisoners who had not had the aid of counsel in their preparation. To the end that the complaints of a prisoner with respect to the validity of his conviction might be adequately presented, the statute contemplated that the attorney appointed to represent an indigent petitioner would consult with him either by mail or in person, ascertain his alleged grievances, examine the record of the proceedings at the trial and then amend the petition that had been filed *pro se,* so that it would adequately present the prisoner's constitutional contentions. The statute can not perform its function unless the attorney appointed to represent an indigent petitioner ascertains the basis of his complaints, shapes those complaints into appropriate legal form and presents them to the court.

The record before us shows unmistakably that the defendant did not receive adequate representation with respect to his original petition and his motion to amend that petition. The judgment dismissing that petition must therefore be reversed. The judge who heard the motion to dismiss the defendant's second petition, filed by the attorney appointed by this court to represent him, apparently felt that he was compelled by section 3 of the Act (Ill. Rev. Stat. 1967, chap. 38, par. 122—3) to dismiss it. But we have held in several cases that the objective of finality must yield when fundamental fairness so requires. *People* v. *Polansky,* 39 Ill.2d 84; *People* v. *Keagle,* 37 Ill.2d 96; *People* v. *Hamby,* 32 Ill.2d 291; *People* v. *Sprinkle,* 27 Ill.2d 398.

Convenience of court and counsel will ordinarily be served, as the trial judge indicated, if subsequent amendments and applications are filed in the original post-conviction proceeding. That, however, is a matter within the discretion of the trial judge. The judgments are reversed, and

the causes are remanded to the circuit court of Cook County for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.