(No. 61826.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JOHN MICHAEL JOSEPH, Appellant.

*Opinion filed June 20, 1986.*

38

SIMON, J., dissenting.

Robert Agostinelli, Deputy Defender, and Thomas A. Lilien, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellant.

Raymond Kimbell III, State's Attorney, of Galesburg (John X. Breslin, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel, and Gerald P. Ursini, law clerk), for the People.

JUSTICE RYAN delivered the opinion of the court:

The defendant, John Michael Joseph, asks this court to determine whether the circuit court of Knox County erred in ruling that section 122—8 of the Post-Conviction Hearing Act (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122—1 et seq.) violates the separation-of-powers clause of the 1970 Constitution (Ill. Const. 1970, art. II, sec. 1). The statute requires that all post-conviction proceedings "shall be conducted and all petitions shall be considered by a judge who was not involved in the original proceed-

ing which resulted in conviction." (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122—8.) We granted defendant's motion for leave to appeal as a matter of right.

The defendant was convicted of murder following a jury trial in the circuit court of Knox County over which Judge Daniel J. Roberts presided. The conviction was reversed on appeal, and the cause was remanded for a new trial. Upon remand, Judge Roberts recused himself, and the cause was assigned to Judge Scott I. Klukos. The second jury trial also resulted in a conviction of murder. The appellate court affirmed this conviction and this court denied leave to appeal.

While the petition for leave to appeal was pending before this court, the defendant filed a *pro se* petition for post-conviction relief in the circuit court of Knox County. The petition initially came before Judge Klukos. Pursuant to section 122—8, the defendant moved to have a judge other than Judge Klukos conduct all the proceedings under the Post-Conviction Hearing Act (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122—1 *et seq.*). Judge Roberts, in his capacity as the administrative judge for Knox County in the Ninth Judicial Circuit, reassigned the cause to Judge Stephen G. Evans.

The State then filed a motion to have section 122—8 declared unconstitutional and to have the cause returned to Judge Roberts for assignment. After a hearing, Judge Evans declared section 122—8 unconstitutional as a violation of the principles of separation of powers. Judge Roberts again assigned the cause to Judge Klukos, who issued an order directing the office of the State Appellate Defender to pursue any and all remedies before this court. We allowed defendant's motion for leave to appeal as a matter of right.

Section 122—8 of the Post-Conviction Hearing Act (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122—8) is a legislative enactment which attempts to govern an aspect of

judicial procedure. (*People v. Ruiz* (1985), 107 Ill. 2d 19, 23.) The defendant contends that this provision is constitutional because it neither *unduly infringes* upon the power of the judiciary, nor conflicts with any rules promulgated by this court.

We note in support of defendant's position "that a strong presumption of constitutionality attaches to any legislative enactment and that the burden rests upon the challenger to demonstrate its invalidity." (*Sanelli v Glenview State Bank* (1985), 108 Ill. 2d 1, 20; *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 368; *Fireside Chrysler-Plymouth, Mazda, Inc. v. Edgar* (1984), 102 Ill. 2d 1, 5, *appeal dismissed* (1984), 469 U.S. 926, 83 L. Ed. 2d 254, 105 S. Ct. 316.) We note also that the wisdom of this legislation is not an issue before this court. *People v. J.S.* (1984), 103 Ill. 2d 395, 407.

The separation-of-powers clause of our constitution provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (Ill. Const. 1970, art. II, sec. 1.) This provision does not contemplate "rigidly separated compartments." (*In re Estate of Barker* (1976), 63 Ill. 2d 113, 119; *Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 58; see also *City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 174.) However, this court has held that if a "power is judicial in character, the legislature is *expressly prohibited* from exercising it." (Emphasis added.) *People v. Jackson* (1977), 69 Ill. 2d 252, 256; see also *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 149; *People v. Bruner* (1931), 343 Ill. 146, 157.

While our constitution does not define the term, this court has stated that "[j]udicial power is the power which adjudicates upon the rights of citizens and to that end construes and applies the law." (*People v. Hawkinson* (1927), 324 Ill. 285, 287.) We have recognized that

this very general definition may be supplemented by looking to the common law and to the history of our institutions at the time of the adoption of the 1970 Constitution. (*People v. Callopy* (1934), 358 Ill. 11, 14; *People v. Brumfield* (1977), 51 Ill. App. 3d 637, 643.) Both of these factors indicate that the administration of our judicial system is an element of the "judicial power" exclusively conferred on the courts.

At common law, it was recognized that the legislative branch was "without power to specify *how* the judicial power shall be exercised under a given circumstance \*\*\*." (Emphasis added.) (*People v. Crawford Distributing Co.* (1972), 53 Ill. 2d 332, 338; *People v. Spegal* (1955), 5 Ill. 2d 211, 219-20.) The legislature was prohibited from limiting or handicapping a judge in the performance of his duties. (5 Ill. 2d 211, 219.) Thus, the concept of "judicial power" included the inherent authority to prescribe and institute rules of procedure. (*Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 149; *People v. Callopy* (1934), 358 Ill. 11, 14-15.) Clearly, this common law prohibition would include matters of how the court was to function, that is matters concerning court administration.

The history of our judicial branch also indicates that court administration falls within the ambit of the courts' inherent "judicial power." The Constitution of 1870 (Ill. Const. 1870, art. VI, sec. 1 *et seq.*) granted to the courts all powers necessary for the complete performance of the judicial function. (*People v. Spegal* (1955), 5 Ill. 2d 211, 220.) Our present constitution provides that the "[g]eneral administrative and supervisory authority over all courts is vested in the Supreme Court and shall be exercised \*\*\* in accordance with its rules." (Ill. Const. 1970, art. VI, sec. 16.) The words "and supervisory" were added in the 1970 provision to emphasize and strengthen the concept of *central* supervision of the judi-

cial system. Ill. Ann. Stat., art. VI, sec. 16, Constitutional Commentary, at 527 (Smith-Hurd 1971).

Article VI, section 7, provides that *"[s]ubject to the authority of the Supreme Court,* the Chief Judge shall have general administrative authority over his court, including authority to provide for divisions, general or specialized, and for appropriate times and places of holding court." (Emphasis added.) (Ill. Const. 1970, art. VI, sec. 7(c).) When our constitution intends that the legislature is to act in governing the activities of the court, the term "as provided by law" is used as the limiting phrase. (See *People v. Brumfield* (1977), 51 Ill. App. 3d 637, 643.) For example, the appellate court's power to directly review administrative actions is limited "as provided by law." Ill. Const. 1970, art. VI, sec. 6; see also Ill. Const. 1970, art. VI, sec. 7(b).

We have held that, when this court has not acted in an area into which it is arguable that the "judicial power" extends, section 16 of article VI (Ill. Const. 1970, art. VI, sec. 16) does not purport to exclude the legislature from acting in any way which may have a *peripheral* effect on judicial administration. (*Cf.* Ill. Ann. Stat., art. VI, sec. 16, Constitutional Commentary, at 528 (Smith-Hurd 1971).) For example, this court has upheld the legislature's enactment of rules of evidence (*People v. Rolfingsmeyer* (1984), 101 Ill. 2d 137), of statutes mandating a life sentence for anyone sentenced to imprisonment for more than one murder (*People v. Taylor* (1984), 102 Ill. 2d 201), and of statutes which affect the proceedings in an action entirely statutory in origin and nature which do not conflict with a rule of this court (*Strukoff v. Strukoff* (1979), 76 Ill. 2d 53).

However, when the legislature has encroached upon a fundamentally judicial prerogative, we have not hesitated to protect the court's authority. This court has found that a statute which purported to require judges

to state their reasons for imposing a particular sentence violated the separation-of-powers clause (Ill. Const. 1970, art. II, sec. 1). (*People v. Davis* (1982), 93 Ill. 2d 155, 161-62.) We also found such a violation where the legislature encroached upon the ability of a trial judge to control his own docket after the trial of a cause had begun. (*People v. Flores* (1984), 104 Ill. 2d 40, 49.) Recently this court held that sections 2—1009 and 13—217 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, pars. 2—1009, 13—217) could not operate to preclude the court from ruling on a motion to dismiss under Rule 103(b) (87 Ill. 2d R. 103(b)). *O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, 282-83.

The defendant argues that section 122—8 of the Post-Conviction Hearing Act (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122—8) does not unduly encroach on this court's administrative and supervisory authority; however, under the principles discussed above, and for the reasons stated below, we find that because of the encroachment in this area of court administration, section 122—8 violates the separation-of-powers clause of our constitution (Ill. Const. 1970, art. II, sec. 1).

We do not believe that the legislature has greater latitude to prescribe procedure in this area simply because post-conviction review is statutory in origin (see *People v. Slaughter* (1968), 39 Ill. 2d 278, 284). Prior to the enactment of this act, the available methods by which a judgment of conviction could be attacked were writ of error, *habeas corpus*, and *corum nobis*. (39 Ill. 2d 278, 284.) The Supreme Court of the United States was concerned that this "merry-go-round" was preventing prisoners from pursuing legitimate constitutional challenges to their convictions. (39 Ill. 2d 278, 284, quoting *Marino v. Ragen* (1947), 332 U.S. 561, 570, 92 L. Ed. 170, 176, 68 S. Ct. 240, 245 (Rutledge, J., concurring, joined by Douglas and Murphy, JJ.).) This concern prompted the

enactment of the Post-Conviction Hearing Act (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122—1 *et seq.*), which was designed to provide a means whereby a prisoner could easily assert his challenge. (See *People v. Slaughter* (1968), 39 Ill. 2d 278, 284-85.) Although post-conviction relief is statutory in origin, it was designed to implement the common law remedies. The amendment we are now considering was not designed to limit or define the scope of the statutory remedy. (See *Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 59-60.) Instead, it directly conflicts with rules of this court and of the circuit court adopted pursuant to the Illinois Constitution of 1970, article VI, sections 16 and 7(c). In *Strukoff* this court denied that the requirement of section 403(e) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 403(e)), by its requirement for a bifurcated hearing, violated the separation-of-powers clause, since dissolution of marriage is entirely statutory in origin and nature. This court noted that the situation in that case was not one "in which a statute directly conflicts with a rule of this court." *Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 58.

Assuming that the statute, standing alone, does not represent a violation of the separation-of-powers clause (Ill. Const. 1970, art. II, sec. 1), the legislature is without authority to interfere with "a product of this court's supervisory and administrative responsibility." (*People v. Jackson* (1977), 69 Ill. 2d 252, 259.) In other words, if a statute conflicts with a rule of this court adopted pursuant to constitutional authority, the rule will prevail. *People v. Cox* (1980), 82 Ill. 2d 268, 274; *People v. Jackson* (1977), 69 Ill. 2d 252, 259.

In this case section 122—8 conflicts with Supreme Court Rule 21 (94 Ill. 2d R. 21). That rule provides:

> "(a) Appellate Court and Circuit Court Rules. A majority of the Appellate Court judges in each district and a

majority of the circuit judges in each circuit may adopt rules governing civil and criminal cases which are consistent with these rules and the statutes of the State ***.

(b) General Orders. The chief judge of each circuit may enter general orders in the exercise of his general administrative authority, including orders *providing for assignment of judges* ***." (Emphasis added.) 94 Ill. 2d Rules 21(a), (b).

The defendant argues that section 122—8 of the Post-Conviction Hearing Act (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122—8) does not conflict with Rule 21 because subparagraph (a) of Rule 21 requires the chief judge of each circuit to assign judges consistent with any applicable statutes, including section 122—8. However, Rule 21(a) pertains only to the rule-making authority of the courts. Rule 21(b), which gives the chief judge the authority to enter general orders providing for the assignment of judges, does not require that the general order be consistent with the statutes. Rule 21(b), adopted pursuant to section 7(c) of article VI of our constitution (Ill. Const. 1970, art. VI, sec. 7(c)), earlier quoted, confers power on each chief judge to enter general orders for the assignment of judges, free from any express legislative limitations.

We also note that the defendant's literal interpretation of Rule 21 would give the legislature unlimited authority over administration of all Illinois courts. It is the undisputed duty of this court to protect its judicial powers from encroachment by legislative enactments in order to preserve an independent judiciary. (*Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 149.) If the rules of each circuit must be consistent with every legislative enactment regarding procedure, even where the subject matter is properly within the ambit of the "judicial power," this duty would be totally abandoned. Rule 21(a) should be properly interpreted as requiring only that

each circuit's rules be consistent with statutes that do not unduly infringe upon the "judicial power."

The defendant also argues that this court, in promulgating our Rule 1 (87 Ill. 2d R. 1), has recognized that the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 100—1 *et seq.*), which includes the Post-Conviction Hearing Act (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122—1 *et seq.*), can govern trial court procedure and administration, and that the legislature may create different rules for particular kinds of actions. Rule 1 provides that "[t]he rules on proceedings in the trial court, together with the Civil Practice Law and the Code of Criminal Procedure, shall govern all proceedings in the trial court ***." 87 Ill. 2d R. 1.

Again, as with Rule 21(a) (94 Ill. 2d R. 21(a)), we cannot agree with the defendant's reading of this rule which would require this court to abandon its duty to protect the authority of the judicial branch of government. (*Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 149.) The proper reading of this rule contemplates that the statutes mentioned, so long as they do not unduly encroach on the "judicial power," and the rules promulgated in these areas should complement one another.

In summary, article VI, section 1, of the Illinois Constitution of 1970 vests the judicial power in the supreme court, an appellate court, and the circuit courts. The supervisory and administrative authority over all the courts is vested in the supreme court, to be exercised in accordance with rules. (Ill. Const. 1970, art. VI, sec. 16.) Subject only to the authority of the supreme court, the chief judge in each circuit has general administrative authority over his court. (Ill. Const. 1970, art. VI, sec. 7(c).) Our Rule 21(b) gives the chief judge authority to enter general orders, including orders for the assignment of judges. (94 Ill. 2d R. 21(b).) The chief judge of the Ninth Judicial Circuit designated Judge Roberts as

the administrative judge of Knox County with authority to assign judicial duties to the judges who are regularly assigned to that county. Thus Judge Roberts' authority to assign the post-conviction petition in this case to a judge flowed directly from the provisions of the constitution and of the rule of this court cited above. Section 122—8 of the Post-Conviction Hearing Act (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122—8) directly interferes with this judicial authority of assignment.

Finally, the defendant maintains that if section 114—5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 114—5(a)), which allows for the substitution of judges upon the defendant's motion, does not violate the separation-of-powers clause (Ill. Const. 1970, art. II, sec. 1), then section 122—8 should not be held to do so. However, the defendant has cited no decisions where the issue of the constitutionality of section 114—5(a) was before an Illinois court. We, of course, express no opinion on the validity of any other statutes regulating judicial procedure here; therefore, we need not address this contention.

We find that the State has sufficiently rebutted the presumption of constitutionality afforded to section 122—8 of the Post-Conviction Hearing Act (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122—8). For the reasons stated above, the order of the circuit court of Knox County is affirmed.

*Order affirmed.*

JUSTICE SIMON, dissenting:

Unlike the majority, I do not believe that the statute at issue in this case threatens the separation of powers. The court's undue concern over a perceived encroachment on judicial turf here, as in other recent cases (see *Kiven v. Mercedes-Benz of North America, Inc.* (1986), 111 Ill. 2d 585 (Simon, J., concurring in supervisory or-

der); *People v. Flores* (1984), 104 Ill. 2d 40, 51 (Simon, J., dissenting); *People v. Davis* (1982), 93 Ill. 2d 155, 163 (Simon, J., dissenting)), takes us further along the road to a government of "rigidly separated compartments" (see *In re Estate of Barker* (1976), 63 Ill. 2d 113, 119) not contemplated by the drafters of our constitution. I regard this as unfortunate.

The majority recites the familiar principle that a strong presumption of constitutionality attaches to all legislative acts. That presumption gives way here, however, to a presumption of judicial inviolability which the majority raises to a more elevated status. The mistake, as I see it, lies in the fact that the majority has divorced the presumption of constitutionality from its root—respect between coordinate branches of government—and has thereby rendered it little more than another rule of statutory construction to be utilized when convenient.

In this case it seems to me eminently possible, without betraying the separation-of-powers provision of our constitution, to accept the legislature's judgment that a different judge should review the post-conviction petition. It also makes sense to do so in light of the fact that the different-judge provision is only a piece of the legislative package which dramatically circumscribes the procedures afforded those seeking post-conviction relief.

The majority's argument to the contrary is apparently twofold. First, it contends that even if no conflicting supreme court rule existed, the statute—section 122—8 of the Code of Criminal Procedure of 1963—standing alone would unduly infringe the judiciary's inherent administrative authority. Second, it concludes that the statute indeed conflicts with a court rule and must therefore fall. I address each in turn.

The majority first declares that administration of the judicial system is an element of judicial power "exclusively conferred on the courts." (113 Ill. 2d at 42.) The

court thereafter concedes what could hardly be doubted from our prior cases: the legislature may take some actions which affect judicial administration. As the majority sees it, this court will give effect to statutes which have a mere "peripheral" effect on judicial administration. 113 Ill. 2d at 43.

I am confused, though, by the majority's concept of which legislative acts intrude upon a "fundamentally judicial prerogative" and which merely involve a *"peripheral* effect on judicial administration" (emphasis in majority opinion) (113 Ill. 2d at 43). Apparently the majority would characterize statutes prescribing rules of evidence (*People v. Rolfingsmeyer* (1984), 101 Ill. 2d 137), mandating that a judge impose a particular sentence (*People v. Taylor* (1984), 102 Ill. 2d 201), requiring a judge to inspect a presentence report before imposing sentence (*People v. Youngbey* (1980), 82 Ill. 2d 556), and ordering a judge to wait two days between the stages of a bifurcated divorce proceeding (*Strukoff v. Strukoff* (1979), 76 Ill. 2d 53), as falling on the "peripheral effect" side of the line. By contrast, statutes telling a judge to state his reasons for imposing a sentence (*People v. Davis* (1982), 93 Ill. 2d 155), requiring five days' notice before dismissing a case *ex parte* for want of prosecution (*Agran v. Checker Taxi Co.* (1952), 412 Ill. 145), and ordering a judge not to proceed for two days if a criminal defendant absconds during trial (*People v. Flores* (1984), 104 Ill. 2d 40) invade fundamental judicial prerogatives. I can discern no rhyme or reason to the distinctions the court has made, and the majority makes no real attempt to defend its decision here in terms of our prior cases.

The morass of our earlier cases to one side, I cannot see how, in any event, section 122—8 can fairly be described as primarily directed to or affecting administration. The statute represents a policy decision by the leg-

islature—which created the Post-Conviction Hearing Act in the first place (see *Strukoff v. Strukoff* (1979), 76 Ill. 2d 53)—that due to a contraction of other procedural safeguards, the defendant should be protected by having a fresh eye look at the case before it is summarily dismissed. There is ample reason for the legislature, in enacting a statute which makes it easier for a circuit court to deny post-conviction relief, to provide the safeguard of a new judge to review what occurred at trial. I do not understand why the judiciary should resist this approach, which strikes me as one guided by a fundamental sense of fairness. This substantive decision by the legislature, like a statute of limitations, has an effect on those administering the judicial system; but the impact is truly "peripheral" to the business of running the courts. I do not regard it, therefore, as a legislative attempt to wrest the governance of the courts from the supreme court in contravention of either the separation of powers or article VI, section 16, of the 1970 Illinois Constitution.

Nothing in article VI, section 7, requires invalidation of this statute either. The majority implies that the legislature must steer clear of any acts perceived as implicating administration because this provision vesting general administrative authority in the chief judge of each circuit subject to the authority of the supreme court (Ill. Const. 1970, art. VI, sec. 7(c)) ousts the legislature completely. I disagree. That the chief judge's administrative authority is limited by the overarching authority of the supreme court does not mean that his authority is otherwise unfettered or that he may ignore legislative enactments. The provision only clarifies the relative authority of the chief judge and the supreme court; it does not say his actions are subject *only* to pronouncements of this court. Would anyone suggest, for example, that a general administrative order by a chief judge discriminating against court employees on the basis of race would be

exempt from the provisions of the Illinois Human Rights Act (Ill. Rev. Stat. 1985, ch. 68, par. 1—101 *et seq.*)?

Nor do I find impressive the argument advanced by the majority that when the Constitution intends the legislature to act it must explicitly say that the judicial power is to be exercised "as provided by law." This phrase occurs only when the Constitution consciously leaves a void and invites legislative action to fill it. To attribute to the drafters of the Constitution the intent to prohibit the legislature from any action which may touch upon the judiciary whenever these magic words are not employed suggests that the drafters thought themselves prescient in all the myriad ways the two branches of government could intersect. As the majority concedes, rules of evidence are permissible, yet there is no provision in the Constitution expressly inviting the legislature to "provide by law" rules of evidence.

The majority also bolsters its argument for judicial inviolability by reference to the common law view of the separation of powers purportedly expressed in *People v. Spegal* (1955), 5 Ill. 2d 211, 219-20, and *People v. Crawford Distributing Co.* (1972), 53 Ill. 2d 332, 338. The majority quotes expansive language from *Crawford Distributing* (drawn from a quotation in *Spegal*) stating that the "legislative branch was 'without power to specify *how* the judicial power shall be exercised under a given circumstance.' " (Emphasis in majority opinion.) (113 Ill. 2d at 42.) It also cites *Spegal* for the same principle and for the further proposition that the legislature could not handicap or limit a judge in the performance of his duties. 113 Ill. 2d at 42.

These cases do not stand for the principles which the majority seeks to extract from them. The language on which the majority's argument is based derives not from *Spegal*, but from the earlier case of *People v. Scott* (1943), 383 Ill. 122. *Scott* had held that a statute provid-

ing that a criminal defendant could waive a jury for trial violated the separation-of-powers doctrine because the statute attempted to specify how the judicial power should be exercised in a given circumstance and because it would handicap or limit the judge in the exercise of his duties. (383 Ill. 122, 126.) The language attributed to *Spegal* does appear in *Spegal*, but only in a passage (*People v. Spegal* (1955), 5 Ill. 2d 211, 219-20) quoting the court in *Scott*. However, the *Spegal* court, in an opinion by Justice Walter V. Schaefer, one of this court's most eminent legal scholars, then proceeded to expressly overrule *Scott*, discrediting along the way the broad view of judicial inviolability embodied in the majority opinion here. Thus, it is obvious that in *Spegal* this court quoted the language from *Scott* on which the majority relies only to show its dissatisfaction with that language. While the *Spegal* court acknowledged that there are "limits beyond which the legislature may not go in specifying how judicial power is to be exercised" (5 Ill. 2d 211, 220), the court made clear that those limits are narrow ones; as examples it noted that the legislature cannot direct the judiciary how to decide a case and cannot unduly circumscribe the power of the courts to determine the facts and apply the law to them. The statute requiring a different judge on post-conviction review does neither, and is in fact far more like the statute allowing the defendant to choose between trial by judge or jury which was ultimately sanctioned by *Spegal*. As in *Spegal*, this court has no authority to "override the determination of the legislature as to the method of trial to be employed." 5 Ill. 2d 211, 220.

*Crawford Distributing* does contain broad language to the effect that the legislature cannot specify how the judicial power is to be exercised in a given circumstance, but the factual situation of that case demonstrates that the principle was limited to the very narrow compass

contemplated by *Spegal*. The court in *Crawford Distributing* only stated that the legislature could not direct the judiciary to construe the State antitrust law in conformity with Federal courts' construction of the Federal antitrust laws. The legislature here has not told the court how to interpret a specific statute; indeed section 122—8 does not tell the judiciary how the judicial power is to be exercised at all. Thus, the fact that the expansive words of *Scott*, quoted and then renounced in *Spegal*, were exhumed in *Crawford Distributing* does not breathe a second life into the view of the separation of powers laid to rest in *Spegal*.

The majority next suggests that section 122—8 is void because it conflicts with our Rule 21 (94 Ill. 2d R. 21). Rule 21 provides in section (a) that a majority of judges of a circuit may adopt rules governing civil and criminal cases as long as they are "consistent with these rules and the statutes of this State"; section (b) permits the chief judge of each circuit to enter general orders in the exercise of his administrative authority. The latter section does not expressly require that such orders be consistent with supreme court rules or legislative acts.

Plainly, section 122—8 and Rule 21 do not collide head on. The logic of the majority opinion is difficult to follow, but the argument is apparently that the authority of the administrative judge of Knox County to assign the defendant's post-conviction petition to the same judge who presided at the trial was ultimately founded in Rule 21(b), that this fact demonstrates a conflict between Rule 21(b) and the statute (which requires assignment to a different judge), and that the statute must therefore be invalidated.

I believe that the majority is incorrect for a number of reasons. Initially, the error lies in the majority's misapprehension that the authority for the administrative judge's assignment power was a general order entered

pursuant to Rule 21(b). As the rules of the Ninth Judicial Circuit (attached as an appendix to this opinion) clearly disclose on their face, that authority was expressly grounded in Rule 21(a) and section 1—104(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 1— 104(b)). By its own terms, the provision establishing an administrative judge and setting forth his duties is a rule, not a general order, and therefore must be "consistent with *** the statutes of this State" under Rule 21(a). Thus, any action taken by the administrative judge pursuant to the local rule could hardly be a sufficient basis for striking down the statute.

The majority's further argument—that we must read a limitation into Rule 21(a) that rules adopted by circuit judges need only be consistent with statutes which do not infringe upon the judicial power—is without force. There is no warrant in the plain language of our rule for such a limitation. The fear that a "literal interpretation" of the rule would "give the legislature unlimited authority over administration of all Illinois courts" (113 Ill. 2d at 46) is also baseless. Rule 21(a) obviously was designed to prevent rules of the *circuit courts* from overturning statutes. The legislature is not thereby given control of judicial administration in view of this court's constitutional power under section 16 of article VI (Ill. Const. 1970, art. VI, sec. 16).

Even assuming that the local rule at issue here had indeed been a general order promulgated by the chief judge pursuant to Rule 21(b), I could not agree that Rule 21(b) confers upon each chief judge the power to enter general orders "free from any express legislative limitations." (113 Ill. 2d at 46.) On this view, this court's decision in *Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, upholding a statutory two-day waiting period between the phases of a bifurcated divorce proceeding, could be effectively overruled by any chief judge in the State who de-

cided to enter a general order to the effect that there would no longer be such a waiting period. Legislative policy choices should not be rendered so fragile merely because of a circuit judge's view of administrative convenience.

The separation-of-powers doctrine does not mean the legislature must avoid all policy choices (*Kiven v. Mercedes-Benz of North America, Inc.* (1986), 111 Ill. 2d 585 (Simon, J., concurring in supervisory order)) which may now or in the future be thought to touch upon rules, orders, or particular directives of this court or the lower courts. A statute may only be invalidated if there is a direct conflict with a supreme court rule in an area of judicial supremacy. *People v. Cox* (1980), 82 Ill. 2d 268, for example, involved a rule of this court which, as interpreted, established "abuse of discretion" as the standard of appellate review of criminal sentences and prohibited a reviewing court from reducing a sentence of imprisonment to one of probation. The court declared unconstitutional a legislative act which purported to change the standard of review and to allow reduction of a sentence to probation. In *People v. Jackson* (1977), 69 Ill. 2d 252, the statute at issue stated that the parties were entitled to conduct *voir dire*, while the court rule provided that the judge would conduct *voir dire* and could permit the parties to supplement that questioning. In view of the direct conflict on a matter within the judicial power, the statute was held unconstitutional.

No such direct conflict between a statute and a rule of this court exists in this case. Section 122—8 does not purport to strip the chief judge of the authority which Rule 21(b) gives him to enter general assignment orders, nor does it lodge that authority elsewhere; it therefore cannot be analogized to the statutes in *Cox* or *Jackson*. The statute does not dictate the judge who should be assigned to the post-conviction hearing. It prescribes only

a narrow substantive limitation on the chief judge's authority to act pursuant to the rule: he may not enter a general order requiring that a post-conviction petition be heard by the judge who presided at the trial. I see no reason why a circuit judge or even this court should be able to trump such a policy decision simply because it has some impact on assignment of cases.

Even accepting the proposition that a general order entered by the chief judge to the effect that post-conviction petitions must be heard by the trial judge would create a conflict requiring invalidation of the statute, any conflict here is purely imagined. Neither the chief judge nor the circuit itself has created any such rule or general order. The only action by the Ninth Circuit was to provide by rule for the appointment of an administrative judge.

The majority is finally reduced to identifying a "conflict" between the statute and the administrative judge's particular directive in this case, which is said to "flow" from Rule 21(b) by way of the Ninth Circuit administrative judge rule (which the majority insists on seeing as a general order). This attempt to bootstrap a conflict of constitutional magnitude is unprecedented in our cases. In my judgment, the administrative judge's directive reassigning this case to the trial judge is simply too far downstream from the headwaters of the Constitution and our rules to implicate the separation of powers. This is especially true here because the Ninth Circuit rule relied upon does not purport to authorize any particular assignment policy in post-conviction cases. Further, a close reading of the rule discloses that only the chief judge is authorized to make "case by case" assignments. The administrative judge, who may "assign additional judicial duties to the Circuit and Associate Judges regularly assigned to that County and may further assign said Judges to divisions within the County in the absence

of an assignment order by the Chief Judge," has not been empowered by the Ninth Circuit to assign a specific judge to a post-conviction proceeding in contravention of the statutes of this State.

In striking down section 122—8, the court also fails to account adequately for Supreme Court Rule 1 (87 Ill. 2d R. 1). Rule 1 specifically incorporates the Code of Criminal Procedure of 1963, of which section 122—8 is a part, into our rules of procedure. Since we have adopted section 122—8 by incorporation, it remains a part of our rules until they are explicitly amended to exclude it. Given the mandate of Rule 1, I cannot understand why the majority strains to find a conflict between the statute and Rule 21, which address different subjects.

Rule 1, at a minimum, commands us to construe statutes and court rules in harmony whenever possible. The majority concedes that the rules and the statutes should complement one another, but I am frankly puzzled by its view of the proper relation of the court and the legislature. After this decision, no statutory provision which may affect procedure is safe because it may be ousted by the administrative authority of this court or even rules or directives of the circuit or appellate courts.

The majority opinion is therefore a harbinger of worse things to come. If this statute is invalid, then the far broader criminal and civil substitution-of-judges statutes (Ill. Rev. Stat. 1983, ch. 38, par. 114—5; ch. 110, par. 2—1001) and the speedy-trial statute (Ill. Rev. Stat. 1983, ch. 38, par. 103—5), which also impose substantive policy limitations on the functioning of the courts, are also on shaky ground.

This court is called on not only to decide the case before it, but also to lay the tracks for future lawmakers and judges. Instead, my fear is that we are proceeding in an *ad hoc* manner in applying the constitutional provision relating to separation of powers. This decision

leaves future decisionmakers to chart an unsurveyed course and likely wander in the wilderness of our separation-of-powers jurisprudence. I therefore dissent.

## APPENDIX

### RULES OF COURT
### NINTH JUDICIAL CIRCUIT
### STATE OF ILLINOIS

The within Rules, ADMINISTRATIVE, GENERAL, and PROBATE shall be effective August 1, 1984. These Rules supercede all former Rules of the Ninth Judicial Circuit Court.

\* \* \*

### *RULES OF COURT*

*POWER OF COURT TO ADOPT RULES*: These rules are promulgated pursuant to Section 1—104(b) of the Code of Civil Procedure providing that the Circuit Court may make rules regulating their dockets, calendars, and business and Supreme Court Rule 21(a) providing that a majority of the circuit judges in each circuit may adopt rules governing civil and criminal cases consistent with rules and statutes.

\* \* \*

### ADMINISTRATIVE RULES

#### RULE A—1 ADMINISTRATION

The Office of the Chief Judge shall have general administrative authority over the Courts in the Ninth Judicial Circuit.

A. ADMINISTRATIVE JUDGE

1. Designation of Administrative Judge—The Chief Judge shall appoint one Judge within each County of the Circuit as the Administrative Judge of that County.

2. Duties of the Administrative Judge—The Administrative Judge shall administer the Judicial Divisions of the County in which he is presiding and perform such other duties as may be required for the proper adminis-

tration of justice.

B. JUDICIAL ASSIGNMENTS

1. Assignments by the Chief Judge—The Chief Judge shall assign Circuit and Associate Judges to the various Counties within the Circuit and may further assign all Judges to Divisions within a County and on a case by case basis.

2. Assignments by the Administrative Judge—The Administrative Judge within each County may assign additional judicial duties to the Circuit and Associate Judges regularly assigned to that County and may further assign said Judges to Divisions within the County in the absence of an assignment order by the Chief Judge.