THIRD DIVISION
 October 30, 1996

No. 1-95-1434

W. ROBERT BLAIR,

 Plaintiff-Appellant,

 v.

BENJAMIN S. MACKOFF, Presiding Judge of the
Domestic Relations of the Circuit Court of Cook
County, Illinois, RICHARD BERLAND, Judge of
the Domestic Relations Division of the Circuit
Court of Cook County, Illinois, and PATRICIA G.
BLAIR,

 Defendants-Appellees.)
)
)
)
)
)
)
)
)
)
)
)
)
)Appeal from the
Circuit Court of
Cook County.

Honorable
Lester Foreman,
Judge Presiding.
 PRESIDING JUSTICE TULLY delivered the opinion of the court:
 Plaintiff, W. Robert Blair, appeals from an order of the circuit court of Cook
County granting the motion to dismiss of defendants, Benjamin S. Mackoff, Presiding
Judge of the Domestic Relations of the Circuit Court of Cook County, Illinois, and
Richard Berland, Judge of the Domestic Relations Division of the Circuit Court of
Cook County, Illinois, pursuant to section 2-619(a)(9) of the Code of Civil Procedure
(735 ILCS 5/2-619(a)(9) (West 1994)). Jurisdiction is vested in this court pursuant
to section 6 of article VI of the Illinois Constitution (Ill. Const. 1970, art. VI,  6) and
Supreme Court Rule 301 (155 Ill. 2d R. 301).
 For the reasons which follow, we affirm.

 FACTUAL BACKGROUND

 In 1990, Patricia Blair (hereinafter Patricia) filed a petition for dissolution of 
marriage against plaintiff in the circuit court of Cook County. The case was assigned
to Judge Robert Berland. In the fall of 1991, Patricia was granted a voluntary
dismissal.
 In 1993, Patricia again filed a dissolution of marriage action against Robert. 
The case was randomly assigned to Calendar B, Judge Aubrey Kaplan, pursuant to
Circuit Court of Cook County General Order 15.3, which provides that each case filed
in the circuit court's Domestic Relations Division shall be assigned by the clerk of the
circuit court to a calendar by random electronic process. Each judge in the Domestic
Relations Division is assigned to a team and to a calendar within each team. Each
judge who works with preliminary matters is assigned to a lettered calendar, and
each trial judge is assigned to a numbered calendar.
 After the initial assignment of the Blair matter, the case was reassigned to
Judge Berland, pursuant to Domestic Relations Division General Order 90-D-2, which
provides that "cases between the same parties refiled in the Domestic Relations
Division shall be transferred to the same preliminary [lettered] and/or trial
[numbered] calendar on which the prior case was last pending regardless of the
identity of allegations contained in the petition or the relief sought." General Order
90-D-2 took effect on June 12, 1990.
 Abe's Log Cabin, Ltd., of which plaintiff owned a 51% controlling interest, had
become involved in the litigation and filed a motion to substitute Judge Berland,
which was heard on January 13, 1995. On that day Judge Berland granted the
motion and assigned the case to the clerk of the circuit court for random electronic
assignment to a preliminary calendar other than Calendar E. Prior to the time that
Judge Berland assigned the case to the clerk, he ruled on a number of motions in the
case, including plaintiff's motion to dismiss for lack of subject matter jurisdiction,
which he denied.
 The case was then randomly assigned to Team A, Judge Sheldon Gardner. 
Thereafter plaintiff filed a motion to substitute Judge Gardner as a matter of right. 
Judge Gardner granted the motion and transferred the case to the presiding judge
for reassignment. The case was then randomly assigned to Team C, Judge Philip
Bronstein. Judge Bronstein heard plaintiff's motion to reconsider Judge Berland's
earlier denial of plaintiff's motion to dismiss the case for lack of subject matter
jurisdiction. Judge Bronstein found Illinois courts did have jurisdiction.
 Thereafter, plaintiff filed a motion to reconsider Judge Bronstein's order that
Illinois has subject matter jurisdiction. Plaintiff argued that he had become a
resident of the Dominican Republic and that Patricia was a resident of Indiana. 
Plaintiff also argued that there was nothing for the court to adjudicate as he had
previously obtained a divorce from Patricia in the Dominican Republic. All of the
judges dealing with this issue found that the Dominican decree lacked integrity and
refused to afford it comity.
 Judge Bronstein conducted hearings during the months of February and March
of 1995 on Patricia's motions for a temporary restraining order and a preliminary
injunction to prevent plaintiff from withdrawing all assets from the jurisdiction. In
March 1995, after a hearing, Judge Bronstein granted Patricia's motion for a
preliminary injunction. At the hearing on Patricia's motion, plaintiff filed a motion
to stay further proceedings, based on the instant litigation. Judge Bronstein denied
plaintiff's motion for stay.
 On December 9, 1994, plaintiff filed his complaint in the circuit court in this
action against defendants. In his complaint, plaintiff asserted that General Order 90-
D-2 was void because it contradicted other circuit court rules and because Judge
Mackoff lacked the authority to issue it. Plaintiff sought a declaration that the
general order was void and an injunction requiring Judge Mackoff to return the
divorce case to Judge Kaplan and enjoining Judge Berland from taking any further
action therein.
 Judge Foreman denied plaintiff's request for a temporary restraining order. 
Judges Mackoff and Berland filed a motion to dismiss the complaint under section 2-
619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 1994)), which
the trial court granted. The instant appeal followed.

 ISSUES PRESENTED FOR REVIEW

 On appeal, the issues are: (1) whether Domestic Relations Division General
Order 90-D-2 was properly promulgated; and (2) whether Domestic Relations Division
General Order 90-D-2 violates our State's constitutionally mandated separation of
powers of the three branches of Illinois government.

 OPINION

 As a preliminary matter we address a motion to dismiss this action as moot
filed in this court by defendants. Specifically, defendants urge that this action is
moot because this court can no longer grant plaintiff any effectual relief. Defendants
cite the fact that the relief which plaintiff sought in his complaint in this action, the
enjoining of Judge Berland from taking any further action in the divorce case and the
requiring of Judge Mackoff to return the case to Judge Kaplan, can no longer be
granted as the dissolution of marriage action has been settled between the Blairs and
a judgment entered therein.
 In HealthChicago, Inc. v. Touche, Ross & Co., 252 Ill. App. 3d 608, 610 (1993),
the mootness doctrine was stated as follows:
 "It is a well-recognized principle of law that a reviewing
 court will decide only actual controversies in which the
 interests or rights of the parties to the litigation can be
 granted effectual relief. [Citation.] An appeal becomes
 moot when a court can no longer effect the relief originally
 sought by an appellant or when the substantial question
 involved in the trial court no longer exists. [Citation.] 
 When a case is rendered moot, a court's decision on the
 merits cannot afford either party relief and any decision
 thus reached is merely an advisory opinion." 
 HealthChicago, 252 Ill. App. 3d at 610.
See also Dixon v. Chicago & Northwestern Transportation Co., 151 Ill. 2d 108 (1992). 
"Illinois courts do not issue advisory opinions and should not indulge in the practice
of rendering opinions simply for the sake of creating precedents to govern future
cases." People v. Halasz, 244 Ill. App. 3d 284, 285-86 (1993).
 However, Illinois courts have recognized an exception to the mootness doctrine
when a case has an issue of substantial impact on the public interest. Madison v.
Nagel, 91 Ill. 2d 231, (1982). "Among the criteria considered in determining the
existence of the requisite degree of public interest are the public or private nature of
the question presented, the desirability of an authoritative determination for the
future guidance of public officers, and the likelihood of future recurrence of the
question." People ex rel. Wallace v. Labrenz, 411 Ill. 618, 622 (1952).
 We conclude that the public interest exception to the mootness doctrine is
applicable to the case sub judice in that the three criteria of Labrenz are met. The
issue of the constitutionality of General Order 90-D-2 is public in nature because it
concerns a question of whether our constitutionally mandated separation of powers
in State government is being violated by the circuit court of Cook County. Our
resolution of the constitutional issue in this case will have an impact upon
matrimonial litigants as well as clarify and further define the powers of the judiciary. 
An authoritative determination of the constitutional issue is desirable for the future
guidance of the courts as well as government and private attorneys. Finally, this is
a recurrent situation. Thus, given the importance of the issues presented in this
case, the public interest would not be served by passing on it. That said, we now
turn to the substantive issues of the case.
 We note that our review of a section 2-619 motion to dismiss is de novo. See
Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill. 2d 112 (1993).
 Plaintiff first argues that the trial court erred in not finding that General
Order 90-D-2 was promulgated without authority and therefore void. Specifically,
plaintiff asserts that the general order is in conflict with General Order 15.3 and also
Circuit Court of Cook County Rule 13.3(b)(i) which provides that "original petitions
shall be assigned at random to a team of judges. Each team shall be identified by an
alphabetical designation and shall hear all matters pertaining to that case. The
calendar of the preliminary judge shall bear the alphabetical designation of the
team." According to plaintiff, as General Order 90-D-2 contradicts General Order
15.3 and Rule 13.3(b)(i), it is void. We disagree.
 General administrative and supervisory authority over all Illinois courts is
vested in the supreme court of Illinois and shall be exercised with its rules. Ill.
Const. 1970, art. VI,  16. In addition, our 1970 Constitution provides that "[s]ubject
to the authority of the Supreme Court, the Chief Judge [of a Judicial Circuit] shall
have general administrative authority over his court, including authority to provide
for divisions, general or specialized, and for appropriate times and places of holding
court." Ill. Const. 1970, art. VI,  7(c). Section 1-104 of the Code of Civil Procedure
also provides that, subject to the Supreme Court Rules, circuit courts may make rules
regulating their dockets, calendars and business. 735 ILCS 5/1-104 (West 1994). In
accord with this is Supreme Court Rule 21(b) which provides that: "[t]he chief judge
of each circuit may enter general orders in the exercise of his general administrative
authority, including orders providing for assignment of judges, general or specialized
division, and times and places of holding court." 134 Ill. 2d R. 21(b). "Rule 21(b),
adopted pursuant to section 7(c) of article VI of our constitution (Ill. Const. 1970, art.
VI, sec. 7(c)), *** confers power on each chief judge to enter general orders for the
assignment of judges, free from any express legislative limitations." People v. Joseph,
113 Ill. 2d 36, 46 (1986).
 It is plaintiff's contention that Rule 21(b) merely permits assignment of judges
to specific calendars and divisions and does not allow for the assignment of individual
cases. We note that plaintiff cited no authority for this proposition and our research
found nothing to support this position. Rather, we believe this argument is
contradicted by the relevant caselaw.
 In People v. Hattery, 183 Ill. App. 3d 785 (1989), this court found that the
authority of the presiding judge of the Criminal Division of the circuit court of Cook
County to assign a particular case flowed directly from the relevant provisions of the
1970 Illinois Constitution, Supreme Court Rules, and a general order of the circuit
court giving presiding judges general administrative powers, including the power to
assign cases. Furthermore, the Hattery court held that a "presiding judge may
personally assign judges to individual cases, or may use, at his discretion,
administrative tools such as computers to facilitate efficient court administration." 
Hattery, 183 Ill. App. 3d at 801. This was true even where, as was the case in
Hattery, the customary way to assign a case was by random computer assignment.
 Similarly, in People v. Joseph, 113 Ill. 2d 36 (1986), our supreme court found
that a judge designated by the chief judge of the Ninth Judicial Circuit had the
authority under the 1970 Illinois Constitution and Supreme Court Rule 21(b) (94 Ill.
2d R. 21(b)) to assign a post-conviction petition to a particular judge.
 Thus, contrary to plaintiff's unsupported argument, the determination of which
judge will hear a particular case constitutes a wholly administrative, rather than
substantive matter. Accordingly, under the well-established principle that judicial
power includes the administration of the courts (People v. Felella, 131 Ill. 2d 525
(1989)), this court has recognized that the judiciary possesses the constitutional
authority to promulgate procedural rules to facilitate the discharge of its duties. 
Davidson v. Davidson, 243 Ill. App. 3d 537 (1993). The power to assign judges is one
of the exclusive powers granted to the judiciary (People v. Dixon, 160 Ill. App. 3d 65
(1989)) and a chief judge's administrative authority to use it is subject only to the
authority of the Illinois Supreme Court. Hattery, 183 Ill. App. 3d 785.
 In light of the foregoing, we find that the chief judge of the circuit court of
Cook County had and, consequently, Judge Mackoff, as the chief judge's duly
authorized delegate, had the administrative power under our 1970 Constitution and
Rule 21(b) to promulgate General Order 90-D-2 and that such power was properly
exercised with respect to General Order 90-D-2. See Joseph, 113 Ill. 2d 36; Hattery,
183 Ill. App. 3d 785.
 Furthermore, we reject plaintiff's contention that General Order 90-D-2 is in
conflict with General Order 15.3 and Circuit Court of Cook County Rule 13.3(b)(i)
which provide for the random assignment of original actions. General Order 15.3 and
Circuit Court of Cook County Rule 13.3(b)(i) are completely silent on the handling of
refiled petitions such as is the case here. Moreover, we believe General Order 90-D-2
is a necessary and altogether proper measure to prevent the type of forum shopping
in matrimonial litigation that was evident from the record in the case sub judice.
 Still to be considered is plaintiff's contention that General Order 90-D-2 is in
violation of our 1970 Constitution's mandate that "[t]he legislative, executive, and
judicial branches are separate. No branch shall exercise powers properly belonging
to another." Ill. Const. 1970, art. II,  1. Specifically, plaintiff argues that General
Order 90-D-2 is in conflict with sections 2-1001 and 2-1009 of the Code of Civil
Procedure (735 ILCS 5/2-1001, 2-1009 (West 1994)). This contention is completely
without merit.
 First, we fail to perceive how General Order 90-D-2 is in conflict with section
2-1001, which provides for the substitution of judges. This argument is undermined
by the facts of this very case. In no way was plaintiff impeded in exercising, through
himself or his surrogate corporation, his rights under section 2-1001. Second, we
again cannot see how General Order 90-D-2 is in conflict with section 2-1009 which
provides for voluntary dismissals. A reassignment under General Order 90-D-2 does
not impede a litigant's ability to have a case dismissed without prejudice. Therefore,
nothing in the order conflicts with the General Assembly's mandates in the Code of
Civil Procedure or acts as an improper exercise of its legislative powers by the
judiciary.
 For the foregoing reasons, the judgment of the circuit court of Cook County is
affirmed.
 CERDA and GALLAGHER, JJ., concur.