# Illinois Official Reports

## Appellate Court

---

### *People v. Rodriguez*, 2015 IL App (2d) 130994

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE R. RODRIGUEZ, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-0994 |
| Filed | December 23, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Ogle County, No. 03-CF-45; the Hon. Robert T. Hanson, Judge, presiding. |
| Judgment | Vacated and remanded for further proceedings. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Patrick F. Cassidy, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Eric R. Morrow, State's Attorney, of Oregon (Lawrence M. Bauer and Barry W. Jacobs, both of State's Attorney's Appellate Prosecutor's Office, of Elgin, of counsel), for the People. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion.<br>Justices Jorgensen and Hudson concurred in the judgment and opinion. |

¶ 1    Defendant, Jose R. Rodriguez, appeals a judgment granting the State's motion to dismiss his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)). We vacate and remand.

¶ 2    In 2003, defendant was charged with first degree murder (720 ILCS 5/9-1(a)(2) (West 2002)). He moved to suppress statements that he made to the police, alleging that he had not knowingly and voluntarily waived his rights. At the hearing on his motion, defendant called Dr. Michael Chiappetta, a clinical psychologist, who testified about his examination of defendant and its results. The trial court denied defendant's motion to suppress. Defendant filed other pretrial motions, but his attorney did not move for a hearing on defendant's fitness to stand trial (see 725 ILCS 5/104-11 (West 2002)).

¶ 3    On May 2, 2005, after a stipulated bench trial, the court found defendant guilty and sentenced him to 40 years' imprisonment. On appeal, defendant argued that the court had erred in denying his motion to suppress DNA evidence and in refusing to order the State to check fingerprints in the victim's home against its fingerprint-identification system. We affirmed. *People v. Rodriguez*, No. 2-05-0862 (2007) (unpublished order under Supreme Court Rule 23).

¶ 4    On April 11, 2008, defendant filed a *pro se* petition under the Act, alleging in part that his trial counsel had been ineffective for failing to investigate his fitness for trial or move for a fitness hearing. The trial court advanced the petition to the second stage and appointed Donald Delbert to represent defendant. On February 20, 2013, Delbert filed an amended petition. The amended petition's introduction requested that the trial court reverse defendant's conviction, "due to a violation of his constitutional rights in that a bona fide doubt existed as to whether the Defendant was unfit [*sic*] to stand trial."

¶ 5    The amended petition alleged as follows. After defendant was charged with first degree murder, he moved to suppress his statements to the police, on the ground that he had been unable to waive his *Miranda* rights knowingly and voluntarily. See *Miranda v. Arizona*, 384 U.S. 436 (1966). Chiappetta examined defendant. Chiappetta testified as follows. During their clinical interviews, he and defendant spoke to each other in English. Defendant understood Chiappetta's questions and responded appropriately. Chiappetta asked defendant whether he was on any medication; about his educational, personal, health, employment, and criminal history; about his use of drugs or alcohol; and about the events leading up to the questioning that allegedly violated *Miranda*. Chiappetta also administered certain tests to defendant and screened him for "psychosis or major mood disorders."

¶ 6    Chiappetta testified that, during the interviews, defendant was oriented to time, place, and person but "spoke sparingly" and "required much probing"; that "[h]is affect was blunt, but he was cooperative"; and that "[m]any times during the interview he appeared perplexed or preoccupied." Defendant acknowledged "something like hearing voices[;] however[,] they were a passing situation and did not arise to the criteria [*sic*] to be considered hallucinations." Defendant added that the situation improved when he used psychotropic medicine or cocaine and marijuana. He told Chiappetta that he had quit school "because *** he didn't understand and that he had often engaged in cheating *** so he could appear to pass."

¶ 7    Chiappetta testified that he gave defendant the Wide Range Achievement Test. The result was that, "[a]s to the reading level, that is word recognition, he was fifth grade equivalent,

spelling, sixth grade equivalent." Chiappetta administered the Wechsler Adult Intelligence Scale to determine defendant's verbal intelligence. Defendant's scores were in the borderline-deficient range; 96% of the population would score higher. On "performance tests," measuring nonverbal skills, 90% of the population would score higher. Defendant's "full scale I.Q.," the composite of his verbal and performance scores, placed him below 95% of the population.

¶ 8    The amended petition noted that the trial court record was silent on whether Chiappetta had been aware that, at the time of the interviews, defendant was taking doxepin, a prescription psychotropic drug. However, jail records (copies of which were attached to the amended petition) showed that defendant had been taking the drug between January 17, 2004, and May 11, 2005, and that he had taken doxepin regularly for all of April 2005 and on May 1, 2005, just before the trial.

¶ 9    The amended petition attached defendant's affidavit, in which he stated that he never spoke to his trial attorney about "the issue of *** hearing voices" and that he had been truthful in providing information to Chiappetta, including the fact that he had been "hearing voices."

¶ 10    After summarizing the proceedings in the criminal case, the amended petition stated the "Issue Presented" as "Whether the Defendant received ineffective assistance of appellate counsel, due to appellate counsel's failure to raise the issue of whether the Defendant received ineffective assistance of trial counsel due to trial counsel's failure to have the Defendant examined with regard to the issue of his fitness to stand trial ***." The amended petition noted that, under section 104-11(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/104-11(a) (West 2002)), as in effect during the criminal case, the issue of a defendant's fitness to stand trial may be raised by either party or the trial court at any appropriate time and, when a *bona fide* doubt of fitness is raised, the court shall decide the issue before proceeding further. Under section 104-11(c) of the Code (725 ILCS 5/104-11(c) (West 2002)), when a *bona fide* doubt of fitness has been raised, the State must prove that the defendant is fit, but the court may call its own witnesses and conduct its own inquiry.

¶ 11    The amended petition then noted that due process bars the prosecution of an unfit defendant, and it cited the statutory definition of fitness (see 725 ILCS 5/104-10 (West 2002)) and case authority on the trial court's discretion to decide whether a *bona fide* doubt of fitness has been raised. The amended petition then argued that, in the criminal case, "a bona fide doubt existed" of defendant's fitness to stand trial, as Chiappetta had testified that, during the clinical interviews, defendant had said that he had been "hearing voices"; that defendant's affect was blunt and cooperative and he had appeared perplexed; and that defendant's intelligence quotient (I.Q.) was in the borderline-deficient range. Thus, the amended petition argued, defendant had been describing symptoms, including hallucinations, indicative of recognized psychotic disorders. The amended petition contended further that, "[a]lthough Dr. Chiappetta's testimony alone created a bona fide doubt as to fitness, the record is silent as to the fact that the Defendant was taking psychotropic medication for many months while in the Ogle County Jail."

¶ 12    The amended petition asserted that, under the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984), defendant's trial counsel had performed unreasonably and defendant had suffered prejudice as a result. This was because counsel had heard Chiappetta's testimony, which raised a *bona fide* doubt, yet he had failed to move for a fitness hearing–and it was reasonably probable that, after a hearing, defendant would have been found unfit. Also, the

symptoms that defendant had exhibited to Chiappetta "may have been caused or exacerbated by" the doxepin. (Defendant's sole authority for this last point was an excerpt from Wikipedia.)

¶ 13    In its "Conclusion," the amended petition stated that (1) defendant was denied due process when a *bona fide* doubt of his fitness was raised but no hearing was held; (2) the record was silent on defendant's use of doxepin, which might have caused or exacerbated his "symptoms" of unfitness; (3) defendant's trial counsel was ineffective for failing to request a fitness hearing; and (4) his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness.

¶ 14    Delbert never filed a certificate under Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013), which, as pertinent here, reads;

> "The record filed in [the trial] court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions."

¶ 15    The State moved to dismiss the amended petition, contending that it had not made a substantial showing of ineffective assistance of counsel. First, the State argued, there was no showing that defendant's trial attorney had performed unreasonably in declining to raise the fitness issue; the presumption of fitness had not been overcome by Chiappetta's testimony and reports. Chiappetta had examined defendant only to ascertain whether he had knowingly and voluntarily waived his *Miranda* rights, a question separate from whether he was fit to stand trial months afterward. Chiappetta had provided only scant evidence from which unfitness for trial could be inferred, and he had also provided evidence to the contrary, such as his testimony that, during their interviews, defendant had understood his questions and responded appropriately, with no signs of delusional thinking. Second, the State argued, the amended petition had not made a substantial showing of prejudice, as there was no reason to infer from the evidence cited in support of the petition that, had a fitness hearing been held, defendant would have been found unfit. Indeed, argued the State, Chiappetta's testimony had not even raised a *bona fide* doubt.

¶ 16    On September 4, 2013, the trial court granted the State's motion and dismissed the amended petition. The court's written order stated that the amended petition failed to make a substantial showing to support its contention that defendant's trial attorney had been ineffective for failing to request a fitness hearing.

¶ 17    Immediately *after* the trial judge ruled from the bench that the amended petition was dismissed, Delbert requested leave to file a motion to appoint an expert witness at the county's expense. The motion cited the principle that prosecuting a defendant who is not fit to stand trial violates due process. It stated further, "to properly prepare his Post-Conviction Petition, the Petitioner needs an expert to review his medical records and render an opinion with regard to the evaluation performed by Dr. Chiappetta." The expert would perform a retrospective fitness examination and render an opinion on whether defendant had been fit for trial in 2005.

¶ 18    Delbert told the judge, "I just want to file, I'm not asking to argue it or anything." The judge responded, "You can file whatever you want." Delbert filed the motion, on which no more proceedings were held. On September 24, 2013, defendant filed a notice of appeal.

- 4 -

¶ 19 On appeal, defendant contends that the cause must be remanded for further second-stage proceedings, because the record does not establish that Delbert provided the level of assistance that Rule 651(c) requires. Defendant observes that, because Delbert never filed a Rule 651(c) certificate, we cannot presume that he undertook his obligations under the rule. See *People v. Mendoza*, 402 Ill. App. 3d 808, 814 (2010). Thus, the record must clearly and affirmatively show that Delbert complied with the rule and provided reasonable assistance. See *People v. Lander*, 215 Ill. 2d 577, 584 (2005); *People v. Richardson*, 382 Ill. App. 3d 248, 256 (2008).

¶ 20 Defendant then argues that the record establishes otherwise–that Delbert failed to amend the *pro se* postconviction petition so that it sufficiently supported *both* of the claims that, according to defendant, the amended petition raised: (1) a claim under *Pate v. Robinson*, 383 U.S. 375 (1966), that he was denied the effective assistance of counsel and, thus, procedural due process, because his trial attorney failed to move for a hearing on his fitness to stand trial; and (2) that he was denied substantive due process, because the trial court convicted him while he was actually unfit to stand trial. Defendant notes that these two types of claims are recognized as substantively distinct: the failure to hold a fitness hearing when there is a *bona fide* doubt violates procedural due process (*id.* at 384-85), while the conviction of an unfit defendant violates substantive due process (*Indiana v. Edwards*, 554 U.S. 164, 169-70 (2008)).

¶ 21 Defendant claims error on *only* the substantive due process claim. He concedes that, despite the lack of a Rule 651(c) certificate, the record shows that Delbert's amended petition "properly alleged and supported a *Pate* claim (and a corresponding claim that trial and appellate counsel were ineffective for failing to raise it)." "But," he continues, "the [amended] petition did not provide the necessary support for its substantive due process claim." According to defendant, to show that he had actually been unfit during trial, Delbert needed to present evidence that defendant was actually unfit. However, defendant maintains, Delbert unreasonably declined to do so. He could have obtained a retrospective fitness examination as a means of determining defendant's fitness to stand trial in 2005, but he waited until after the judgment dismissing the amended petition before he even moved to appoint an expert witness who could perform a retrospective fitness examination.

¶ 22 The State responds that defendant's argument on appeal fails because (1) it concedes that Delbert performed reasonably under Rule 651(c) *vis-à-vis* the procedural due process claim that the *pro se* and amended petitions actually raised and (2) it unsoundly relies solely on contending that Delbert did not fulfill his obligations *vis-à-vis* the substantive due process claim that the amended petition purportedly raised. According to the State, the amended petition did not actually raise a claim of substantive due process–*i.e.*, that, whatever the effectiveness of his trial attorney, defendant was ultimately tried while unfit. The State reasons that Delbert could not have "neglected" a nonexistent claim. Thus, it concludes, because defendant now waives any contention that Delbert did not satisfy Rule 651(c) as to the sole claim that the amended petition raised, there is no basis to hold that Delbert fell short of his obligations.

¶ 23 When the record in an appeal from the second-stage dismissal of a petition does not contain the defendant's attorney's certificate of compliance with Rule 651(c), the record must clearly and affirmatively show that the attorney substantially complied with the rule. *Richardson*, 382 Ill. App. 3d at 256. Defendant contends that the record does not show that Delbert substantially complied with the rule. We agree.

¶ 24    The Act provides both that counsel may be appointed for the defendant at the second stage if the defendant is indigent and that a petition may be amended or withdrawn. 725 ILCS 5/122-4, 122-5 (West 2012). Our supreme court has explained:

> "To the end that the complaints of a prisoner with respect to the validity of his conviction might be adequately presented, the statute contemplated that the attorney appointed to represent an indigent petitioner would consult with him either by mail or in person, ascertain his alleged grievances, examine the record of the proceedings at the trial and then amend the petition that had been filed *pro se*, so that it would adequately present the prisoner's constitutional contentions." *People v. Slaughter*, 39 Ill. 2d 278, 285 (1968).

¶ 25    The court addressed these same considerations in the requirements of Rule 651(c):

> "Upon the timely filing of a notice of appeal in a post-conviction proceeding, if the trial court determines that the petitioner is indigent, it shall order that a transcript of the record of the post-conviction proceedings, including a transcript of the evidence, if any, be prepared and filed with the clerk of the court to which the appeal is taken and shall appoint counsel on appeal, both without cost to the petitioner. The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner either by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013).

¶ 26    The ultimate aim of both the Act and Rule 651(c) is the adequate presentation of the petitioner's claims. See *Slaughter*, 39 Ill. 2d at 285 ("To the end that the complaints of a prisoner *** might be *adequately presented*"; "so that it would *adequately present* the prisoner's constitutional contentions." (Emphases added.)); Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013) ("an *adequate presentation* of petitioner's contentions" (emphasis added)). According to our supreme court, the Act "can not perform its function unless the attorney appointed to represent an indigent petitioner ascertains the basis of his complaints, shapes those complaints into appropriate legal form and presents them to the court." *Slaughter*, 39 Ill. 2d at 285. To achieve that aim, counsel must consult with the petitioner, examine the trial record, and make to the *pro se* petition any amendments that are necessary for an adequate presentation of the petitioner's contentions.

¶ 27    Postconviction counsel is not required to amend a petitioner's *pro se* petition; rather, he is required only to investigate and present the petitioner's claims. *People v. Kirk*, 2012 IL App (1st) 101606, ¶ 21. Counsel is not required to raise additional issues, but he may do so if he chooses. *Id.*

¶ 28    Here, the record shows that, not only was Delbert aware of the issue regarding defendant's fitness to stand trial, he consistently brought this issue to the court's attention in an unsuccessful attempt to get an expert to perform a retrospective fitness evaluation to determine if defendant was fit to stand trial in 2005. Delbert's knowledge of this constitutional issue is demonstrated by the following colloquies in the trial court:

> "MR. DELBERT: Well judge, this morning I had a motion to present to the court. I've done a lot of research. I've gotten all of the subpoenaed materials back, and I was going to ask the Court today–not to get into it–but I have prepared a rather lengthy

motion about appointing an expert witness to do a psychological evaluation; however, I haven't really had a face-to-face conversation with Mr. Rodriguez since January, I think, so I had already served a copy of that motion on Mr. Rock [assistant State's Attorney].

I've since gotten it back, and I'm going to leave it in my briefcase until I can go over it with him. I don't want to file anything until I talk to him."

At the next court date:

"MR. DELBERT: Judge, I did indicate before that I would be asking the court, first of all, I'm not ready to file that motion, but I am going to be asking the court in the near future to appoint an expert witness with regard to Mr. Rodriguez's fitness to stand trial and any issues related to that fitness back in 2004 [*sic*] when this case was tried. I have not had a chance to see Mr. Rodriguez because he hasn't been brought to court on his last two court dates. I did not have an opportunity to speak with him at length about this motion, if he wants me to proceed on this. He, he originally filed a post-conviction petition containing, I believe, nine different issues and we're working on, on those, Judge.

THE COURT: Okay. Now, have you secured a potential expert witness or are you still trying to find one?

MR. DELBERT: No, Judge. In fact, I spent quite a bit of time just researching the issue and how you do a retroactive evaluation, and whether it was lawful or not, and it is, but, you know, I just need a little more time to refine my motion here, Judge."

Later that year:

"MR. DELBERT: I've been to Stateville and visited with my client. I've explained to him what I'm doing, the issue that I've really focused on in his–in his Post-conviction Petition, and he's on board with me 100 percent. I believe that would be safe to say.
\*\*\*
MR. DELBERT: I have another issue that I want–I don't have a written motion prepared yet, but I need to get a written motion for this Court, if I could speak and tell you what–what I'm thinking about, what the issue is in an informal way, I would appreciate that today.

I have an issue, Judge, that I found in the case that involves whether or not Mr. Gonzalez Rodriguez excuse me–whether Mr. Rodriguez was mentally fit at the time of his trial. I have discovered new evidence that's never been before the Court before, and I was wondering if the Court would consider an expert witness to give an opinion as to whether there was–I think what I'm going to have to prove to this Court is that there's a bona fide doubt as to Mr. Rodriguez' mental state back at the time of his trial.

THE COURT: Okay.

MR. DELBERT: I was wanting to get a psychologist to review everything to give an opinion only as to whether, in his mind, this will be a person that's familiar with doing these evaluations, whether it would even rise to the level of a bona fide doubt in his mind, or whether he thought it was a bona fide doubt at the time.

THE COURT: All right. Well, I think–I'm not going to make any kind of a determination on that issue now. It's not in writing. I understand you can make an oral

motion, but I think the first thing we need to do is get the Amended Motion on file, and then we'll proceed from there."

¶ 29 Delbert continued addressing this issue even after he filed the amended petition, seeking leave to file his motion and even raising the issue in his argument at the hearing on the State's motion to dismiss. Finally, in the motion that he "filed" after the court granted the State's motion to dismiss, he stated that "[i]t is a violation of due process to prosecute a defendant who is unfit to stand trial" and that, "in order to *properly prepare* his Post-Conviction Petition, the Petitioner needs an expert to review his medical records and render an opinion with regard to the evaluation performed by Dr. Chiappetta." (Emphasis added.)

¶ 30 Clearly, defendant's fitness to stand trial was a constitutional issue that was strongly considered, should have been fully explored, and possibly should have been raised in the amended petition. Yet, for whatever reason, it was never fully explored, let alone raised. We agree that defendant's fitness at the time of trial needed to be reviewed in order for Delbert to properly prepare the amended petition. The failure to do so, so clearly evident in the record, leads us to conclude that Delbert did *not* make "amendments to the petitions filed *pro se* that are necessary for an adequate presentation of [defendant's] contentions." Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013).

¶ 31 The State argues that, whatever Delbert's deficiencies in pursuing an expert witness, defendant cannot prevail on appeal by arguing that Delbert did not sufficiently support the amended petition's claim that defendant had been denied substantive due process. The State argues that defendant's argument rests on a false premise–that the amended petition actually raised a claim that he was denied substantive due process because he was tried while unfit. However, the State's argument only confirms that, in violation of Rule 651(c), Delbert failed to fully explore and raise in the amended petition a known constitutional issue.

¶ 32 The record here clearly and affirmatively shows that Delbert failed to substantially comply with Rule 651(c) and failed to provide the reasonable level of assistance required in a second-stage postconviction proceeding. See *People v. Kegel*, 392 Ill. App. 3d 538, 540-41 (2009). Thus, we must vacate the trial court's dismissal of defendant's amended petition and remand the cause for the filing of a new amended petition and further proceedings thereon.

¶ 33 For the foregoing reasons, the judgment of the circuit court of Ogle County is vacated, and the cause is remanded for further proceedings in accordance with this opinion.

¶ 34 Vacated and remanded for further proceedings.