NOTICE

Decision filed 10/04/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 190482-U

NO. 5-19-0482

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 97-CF-962 |
| | ) | |
| ANDREW McGRAW, | ) | Honorable |
| | ) | John J. O'Gara, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court.
Justices Cates and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: The State's motion to supplement the record is denied as moot where the record on appeal rebuts any presumption or assertion contained in the belated Rule 651(c) certificate of compliance filed by the defendant's postconviction counsel. Furthermore, the second-stage dismissal of the defendant's postconviction petition is reversed where the record on appeal establishes that counsel failed to comply with the requirements of Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) and where the defendant did not receive a reasonable level of assistance from postconviction counsel. We remand for further second-stage proceedings with instructions that new counsel be appointed to represent the defendant.

¶ 2    The defendant, Andrew McGraw, appeals the dismissal of his postconviction petition at second-stage proceedings by the circuit court of St. Clair County. He argues that he was denied reasonable assistance of postconviction counsel as required pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) where his postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). For the reasons that follow,

1

we reverse the dismissal of the defendant's petition and remand for further second-stage proceedings with instructions that new counsel be appointed to represent the defendant.

¶ 3                                  I. BACKGROUND

¶ 4     We initially note that the facts of the offense have been repeatedly iterated by this court; therefore, we recite only those facts necessary for this appeal.  See *People v. McGraw*, No. 5-99-0666 (2001) (unpublished order under Illinois Supreme Court Rule 23); *People v. McGraw*, No. 5-03-0361 (2005) (unpublished order under Illinois Supreme Court Rule 23); *People v. McGraw*, No. 5-08-0568 (2010) (unpublished order under Illinois Supreme Court Rule 23).

¶ 5     On October 3, 1997, the defendant was charged by indictment with two counts of first degree murder for the shooting deaths of Herman Munson and Dawn Rogers.  Prior to trial, the defendant's counsel filed a motion to suppress the defendant's confession to law enforcement officers.  The motion asserted, in part, that the defendant's statements were taken without him being properly Mirandized; the defendant's request for an attorney was denied, and officers continued to question him; the defendant did not have the mental capacity to understand the nature of the proceedings involved; and the defendant was functionally illiterate in that he could not understand the statements he had previously given.

¶ 6     On September 17, 1998, the State filed a motion for psychiatric evaluation to ascertain whether the defendant was able to waive his *Miranda* rights intelligently, knowingly, and willingly.  The trial court granted the State's motion and ordered Dr. John Rabun to examine the defendant.  Dr. Dan Cuneo also conducted a psychiatric evaluation of the defendant.  Based on both doctors' findings and testimony, the parties stipulated, and the court ordered, that the defendant's statements to police would not be used in the State's case in chief where the statements were not made after a knowing and intelligent waiver by the defendant of his *Miranda* rights.

2

¶ 7    On July 26, 1999, the defendant was convicted by a jury of two counts of first degree murder. The following facts were adduced at trial. On August 25, 1997, Twanna Ellison, a 22-year-old registered nurse, was riding around Washington Park with her friend Shameeka Heard. About 9 p.m., Ellison pulled into Bob's Liquor Store (Bob's) parking lot and parked her car near a light post. A blue Honda Accord was parked to her left. Heard recognized the man sitting in the front passenger seat of the Honda as Herman Munson and began speaking to him. While they were talking, Ellison turned around to get music out of her back seat and noticed a man stooping down behind her car.

¶ 8    The two women exited Bob's and got into the Honda. Munson was saying goodbye to Heard when one of the women, Dawn Rogers, shifted the Honda into reverse and began to back up. The stooping man stood up and fired shots into the Honda. Ellison watched the man as he continued firing. Heard dove into her back seat and shouted at Ellison to drive away. When the shooting stopped, the Honda went forward and crashed into a light pole. Ellison drove away and dropped Heard at the house where Munson lived with his mother.

¶ 9    Heard contacted the police after the shooting to report what she witnessed. Ellison also contacted the police the next day and identified the defendant as the shooter from a photo lineup. There were several other witnesses to the shooting that testified for the State.

¶ 10    Lonnie Rogers, Dawn Rogers's cousin, testified that he was using a payphone at Bob's when he saw a green Chevrolet Malibu pull into Bob's parking lot, near the drive-through window. He recognized the defendant when he got out of the Chevrolet. Lonnie watched as the defendant went into the trunk of the vehicle and removed a gun that looked like an assault rifle. He watched the defendant walk toward the other side of the liquor store, but lost sight of him. Roughly 10 seconds later, Lonnie heard several loud gunshots. He then saw someone who looked like the

defendant carrying the same weapon running along a path behind the liquor store. Approximately five hours after the shooting, Lonnie saw the defendant in Washington Park, and the defendant appeared to be drunk. He also heard the defendant say, "I told you I was going to get that punk mother f***er."

¶ 11   The State presented evidence that there was an ongoing feud between the defendant and Munson. Two witnesses testified that the day before the incident at Bob's, the defendant fired shots at Munson's home. The defendant believed that Munson retaliated later that day and shot at his house, trying to kill him. Physical evidence also supported the existence of the feud. The State used this evidence to establish motive.

¶ 12   The jury found the defendant guilty on two counts of first degree murder. In sentencing the defendant, the trial court considered the presentence investigation report, the facts in evidence, the statements of the attorneys, and the defendant's opportunity to give a statement on his own behalf. Pursuant to statute, the trial court sentenced him to a term of natural life in prison on each count, with the sentences to run concurrently. See 730 ILCS 5/5-8-1(c)(ii) (West 1998).

¶ 13                              A. Direct Appeal

¶ 14   On direct appeal, the defendant alleged he was denied effective assistance of trial counsel where counsel failed to move for the exclusion of other-crimes evidence, failed to request a limiting instruction at the time the other-crimes evidence was admitted, failed to object to inadmissible hearsay, and failed to seek a continuance during the trial to secure the testimony of an alibi witness. See *McGraw*, No. 5-99-0666. On November 25, 2001, this court affirmed his conviction, declining to address the defendant's claim as the record was insufficient to determine the actions taken to locate the alibi witness, and noting that the defendant's claim would be more appropriately addressed in a proceeding for postconviction relief.

4

¶ 15                                   B. Postconviction Petition

¶ 16    On April 22, 2002, the defendant filed his first petition for postconviction relief. The petition advanced to the second stage, and the trial court appointed P.K. Johnson V to represent the defendant. The defendant's amended petition contended, *inter alia*, that trial counsel failed to interview a potential alibi witness and failed to properly subpoena two witnesses who were present at the shooting and would have testified that the defendant was not the shooter.

¶ 17    On April 25, 2003, the State filed a motion to dismiss the petition, asserting, in part, that a hearing on the petition was not warranted where it was not supported by affidavits of the witnesses who defense counsel had allegedly failed to pursue. On May 5, 2003, the amended petition was supplemented with the affidavit of one of the three witnessed named in the petition. The affidavit stated, "[O]n the night of August 25, 1997, I was with Andrew McGraw at a house located at the intersection of 59th Street and Forest Boulevard in East St. Louis." It also stated that at some time after that date, the witness's girlfriend told him that on the night of the murder she witnessed a person other than the defendant at the scene of the shootings carrying a gun. The witness stated that he had seen this same person carrying an AK-47 weapon in the past and that "a few days after August 25, 1997, [this same person] informed me that he just killed somebody."

¶ 18    The petition was heard on May 8, 2003, and taken under advisement by the trial court. On May 20, 2003, the court granted the State's motion to dismiss. It held, in part, that the affidavit was inadequate to impeach the testimony regarding the defendant's guilt. On May 28, 2003, Johnson filed a Rule 651(c) certificate of compliance. The defendant appealed, arguing that his petition was sufficient to establish that his trial counsel was incompetent because counsel had failed to interview or subpoena an alibi witness who would have supported the defendant's alibi defense and contradicted the testimony of the State's eyewitness. This court affirmed the lower

5

court's dismissal of the petition, finding that the lower court properly concluded that the affidavit was insufficient to require the court to advance the defendant's postconviction petition to the third stage of consideration under the Act. See *McGraw*, No. 5-03-0361.

¶ 19                                    C. First Successive Postconviction Petition

¶ 20    On December 4, 2007, the defendant filed a *pro se* successive postconviction petition, alleging that he had been denied the effective assistance of counsel where trial counsel failed to file a motion to exclude other-crimes evidence, failed to request instructions regarding other-crimes evidence, failed to object to hearsay evidence, and failed to seek a continuance in order to secure the testimony of a purported alibi witness. The State filed a motion to dismiss the defendant's successive postconviction petition where it was filed without leave of court. Johnson was once again appointed to represent the defendant and thereafter filed a motion for leave to file a successive postconviction petition.

¶ 21    On October 15, 2008, the trial court held a hearing on the defendant's motion. Following the hearing, the court denied the defendant leave to file the successive postconviction petition and granted the State's motion to dismiss. On October 16, 2008, Johnson filed a Rule 651(c) certificate of compliance.

¶ 22                                    D. Current Successive Postconviction Petition

¶ 23    On August 17, 2017, the defendant filed the successive petition at issue here. The defendant's *pro se* petition argued that his mandatory life sentence was unconstitutional where it violated the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution due to his young age, immaturity, and rehabilitative potential at the time of the offense. In so arguing, he specifically pointed to the lack of discretion afforded to the trial court in determining his sentence.

¶ 24    After more than 90 days passed from the time of the defendant's filing of his successive postconviction petition, the trial court once again appointed Johnson to represent him.  On March 14, 2018, the State filed a motion to reconsider the trial court's order appointing counsel, which the court denied.  The court also granted the defendant leave to file the successive petition, but only as to the eighth amendment claim.

¶ 25    On December 7, 2018, Johnson filed an amended petition on the defendant's behalf, arguing that the sentencing statute under which the defendant was sentenced was unconstitutional under the eighth amendment of the United States Constitution as applied to the defendant where the trial court was not allowed to consider the factors related to the defendant's youth at the time of the offense.  The amended petition likewise argued that the defendant's sentence violated the proportionate penalties clause of the Illinois Constitution.  Johnson failed to file a Rule 651(c) certificate.

¶ 26    On January 4, 2019, the State filed a motion to dismiss the petition, arguing that the defendant did not allege a lack of culpable negligence for failing to timely file his petition, and that the petition failed to allege evidence sufficient to show that the sentence was disproportionate. In response, the defendant filed an affidavit from Johnson regarding timeliness.

¶ 27    On October 24, 2019, the trial court dismissed the defendant's petition, finding that the defendant failed to show that the late filing was not due to his own culpable negligence.  The court went on to find that the defendant's sentence did not violate the eighth amendment where the defendant was not a juvenile at the time of the offense, and where his intelligence level did not render his sentence disproportionate. On November 13, 2019, the defendant filed a timely notice of appeal.

¶ 28                                   II. ANALYSIS

¶ 29    On appeal, the defendant argues that this court should reverse the trial court's dismissal of his postconviction petition and remand for further second-stage proceedings where his postconviction counsel failed to file a Rule 651(c) certificate of compliance and where the record does not clearly and affirmatively establish that postconviction counsel examined the record or the proceedings at trial and where counsel failed to amend the petition into a legally viable claim.

¶ 30    We review *de novo* whether postconviction counsel provided reasonable assistance. Under the requirements of Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), substantial compliance is sufficient. See *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18. The presumption of reasonable assistance that arises when a Rule 651(c) certificate is filed with the trial court may be rebutted by the record. *People v. Russell*, 2016 IL App (3d) 140386, ¶ 10. There is no requirement that a defendant make a positive showing that counsel's failure to comply with Rule 651(c) caused prejudice, because if postconviction counsel failed to fulfill the duties of Rule 651(c), remand is required, regardless of whether the claims raised by defendant in the petition had merit. *Id.* ¶ 12. Likewise, counsel's failure to comply with Rule 651(c) will not be excused on the basis of harmless error, because a reviewing court will not engage in speculation as to whether the lower court would have dismissed the petition at the second stage had counsel complied with the rule. *Id.*

¶ 31    The purpose of Rule 651(c) is to ensure that postconviction counsel shapes defendant's *pro se* claims into appropriate legal form and thereafter presents those claims to the trial court. *People v. Jones*, 2016 IL App (3d) 140094, ¶ 28. To further that purpose, Rule 651(c) requires a showing that postconviction counsel took whatever steps necessary to secure the adequate representation of defendant's claims. *Id.* If postconviction counsel does not adequately complete the duties mandated by Rule 651(c), the statutory right to reasonable assistance cannot be fully

8

realized. *Id*. The failure to amend a defendant's petition can, under certain circumstances, rise to the level of an impermissible "total failure of representation" that amounts to postconviction counsel representing a defendant "in name only." *People v. Turner*, 187 Ill. 2d 406, 415 (1999). Our supreme court has iterated that if a reviewing court determines that "counsel essentially did nothing to shape the [*pro se*] claims into the appropriate legal form," defendant "must be given an opportunity to replead his post-conviction petition with the benefit of reasonable assistance of counsel." *Id*. at 416-17. Denying defendant this opportunity on remand with new counsel essentially "render[s] the appointment of counsel in post-conviction proceedings nothing but 'an empty formality.' " *Id*. at 417 (quoting *People v. Garrison*, 43 Ill. 2d 121, 123 (1969)).

¶ 32                              A. Motion to Supplement the Record

¶ 33    Before moving to the substance of this appeal, we first address the State's motion to supplement the record with defense counsel's Rule 651(c) certificate of compliance filed in the lower court. On April 29, 2022, the State filed a motion to supplement the record with the Rule 651(c) certificate of compliance, required by Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), which Johnson failed to previously file. However, the State contends that we should allow the record to be supplemented with a belated certificate executed by Johnson and filed with the trial court on April 11, 2022. In his sworn affidavit, Johnson stated that he consulted with the defendant by mail and in person, examined the entire record of the proceedings and sentencing, made amendments to the defendant's *pro se* petition, and filed an amended petition for postconviction relief on the defendant's behalf.

¶ 34    The defendant filed an objection to the State's motion noting that the certificate of compliance was not filed with the trial court until two years after he filed a notice of appeal. He further argued that we should not grant the State's motion to supplement with the certificate of

compliance where it would be contradicted by the record. The State filed a motion for leave to file a response. All three motions were taken with the case. Based on the following, we agree with the defendant that the record on appeal rebuts the belated contention from postconviction counsel that he substantially complied with Rule 651(c) and deny the State's motion as moot.

¶ 35    The Act provides that, at a minimum, counsel appointed to represent an indigent defendant will ascertain the basis of defendant's complaint, shape those complaints into appropriate legal form, and present defendant's constitutional arguments to the trial court. *People v. Richmond*, 188 Ill. 2d 376, 381 (1999); *People v. Slaughter*, 39 Ill. 2d 278, 285 (1968). Rule 651(c) outlines the specific duties of appointed counsel in postconviction proceedings and requires that the record in postconviction proceedings demonstrate that appointed counsel "has consulted with [defendant] by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of [defendant's] contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 36    Here, even assuming *arguendo* that the belated certificate the State seeks to add to the record on appeal was properly before this court, we agree with the defendant that the record rebuts any presumption or assertion contained in the certificate. Therefore, we deny as moot the State's motion to supplement the record with the belated certificate of compliance where it is rebutted by the record on appeal.

¶ 37                          B. Rule 651(c) Compliance

¶ 38    We now address the substance of the defendant's argument that he was denied reasonable assistance of counsel where counsel failed to file a Rule 651(c) certificate of compliance and where the record does not clearly and affirmatively establish that postconviction counsel examined the

10

record or the proceedings at trial and where counsel failed to amend the petition into a legally viable claim.

¶ 39    The Act provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated in his original trial or sentencing hearing. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). A postconviction proceeding is a collateral attack on the judgment and only allows inquiry into constitutional issues that were not and could not have been adjudicated in an appeal of the underlying judgment. *People v. Ortiz*, 235 Ill. 2d 319, 328 (2009).

¶ 40    The right to counsel in postconviction proceedings is derived from statute rather than the Constitution. *People v. Owens*, 139 Ill. 2d 351, 364 (1990). Thus, postconviction petitioners are guaranteed only the level of assistance which the statute provides. *Id.* The level of assistance required in postconviction proceedings has been defined by our supreme court to mean a "reasonable" level of assistance. *People v. Flores*, 153 Ill. 2d 264, 276 (1992). Reasonable assistance includes compliance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). See *People v. Carter*, 223 Ill. App. 3d 957, 961 (1992). We review *de novo* an attorney's compliance with Rule 651(c). *Profit*, 2012 IL App (1st) 101307, ¶ 17.

¶ 41    In order to comply with Rule 651(c), either: (1) appointed counsel must file a certificate to show that the requirements of the rule were complied with, or (2) the record as a whole demonstrates that counsel complied with those provisions. *Richmond*, 188 Ill. 2d at 380. The requirements of Rule 651(c) imposed on postconviction counsel serve to ensure that the claims of a defendant are adequately presented. *Slaughter*, 188 Ill. 2d at 381. The Act requires a showing that counsel has consulted with defendant to ascertain contentions of deprivation of constitutional

11

rights, has examined the record of proceedings, and has amended the *pro se* petition, if necessary. *Id*. at 382.

¶ 42    In *People v. Suarez*, 224 Ill. 2d 37, 47 (2007), the supreme court held that remand was required where postconviction counsel failed to comply with the requirements of Rule 651(c), regardless of the merits of defendant's claim.  In *Suarez*, counsel filed an amended petition but failed to file the requisite Rule 651(c) certificate of compliance.  The court found that "[s]uch [Rule 651(c)] compliance must be shown regardless of whether the claims made in the *pro se* or amended petition are viable."  *Id*. at 52.  The court went on to explain that:

> "Our analysis, *** does not depend upon whether the *pro se* or supplemental petitions in this case did or did not contain potentially meritorious issues.  Our Rule 651(c) analysis has been driven, not by whether a particular defendant's claim is potentially meritorious, but by the conviction that where postconviction counsel does not adequately complete the duties mandated by the rule, the limited right to counsel conferred by the Act cannot be fully realized."  *Id*. at 51.

¶ 43    In the present case, it is undisputed that the defendant's postconviction counsel failed to file the requisite certificate of compliance stating that he had fulfilled his obligations under Rule 651(c).  Therefore, we instead look to the record as a whole in making our conclusion.

¶ 44    Based on our review of the record, Johnson failed to comply with the requirements of Rule 651(c).  By Johnson's own account, he spent 7 hours and 12 minutes working on the defendant's postconviction petition over the course of 600 days.  He failed to cite any additional facts or evidence in the amended petition that were not already contained in the defendant's *pro se* petition. He failed to cite the record in his filings with the trial court and failed to file a written response to the State's motion to dismiss.  He neglected to cite to or attach the assessment submitted by Dr. John S. Rabun that provided specific details regarding the defendant's family, behavior, development, education, and psychiatric and substance abuse history, which directly pertained to the defendant's contentions in his *pro se* petition.

12

¶ 45    The State argues that the mere fact that Johnson previously represented the defendant is proof positive that he reviewed the record. However, this is unpersuasive where the defendant's current contentions were not addressed in previous petitions and a fresh review of the record could have revealed facts that were previously disregarded.

¶ 46                                III. CONCLUSION

¶ 47    Therefore, the order of the circuit court of St. Clair County dismissing the defendant's petition for postconviction relief is hereby reversed and the case is remanded for further second-stage proceedings with instructions that the defendant be appointed new counsel.


¶ 48    Reversed and remanded with instructions.